YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY v. SHADRACK B. WILSON ET AL.

1. CAUSE OF ACTION.    *Nominal plaintiff.    Use.    Extent of recovery.*

   Where a suit is begun by one person for the use of another a recovery can be had only on the cause of action, the legal title to which is in the plaintiff.

2. SAME.    *Assignment.    Code 1892, § 660.    Substituted plaintiff.*

   Where in such case the plaintiff, after suit begun, assigned the cause of action to the usee, and under Code 1892, § 660, authorizing such a substitution, the usee is substituted for the plaintiff, the extent to which recovery may be had is not thereby enlarged.

3. SAME.    *Evidence.    Independent contract.*

   Where one party sues upon a contract for the use of another, and pending the suit the nominal plaintiff assigns the cause of action to the usee, evidence of an independent antecedent contract between defendant and the usee is not admissible.

4. CARRIERS.    *Transportation.    Delay.    Cause of action.    Assignment. Right of assignee.    Evidence.    Antecedent contract.*

   Where the bill of lading for the transportation of cotton expressly provided that the carrier should not be bound to transport the property by any particular train or vessel, or in time for any particular market, but only with such reasonable dispatch as its general business would permit, and there was no evidence of a breach of such agreement, evidence, in an action for delay based on such bill of lading, of an antecedent verbal contract between the carrier and an assignee to whom the cause of action

had been transferred after suit brought, alleged to have been made prior to the delivery of the cotton, to which agreement the original shippers were not parties, was inadmissible.

FROM the circuit court of Yazoo county.

HON. ROBERT POWELL, Judge.

Wilson and others doing business under the name of S. B. Wilson & Co., appellees, were made plaintiffs in the court below by substitution, under Code 1892, § 660. The suit was begun by John Dykes and others, doing business under the name of John Dykes & Co., as nominal plaintiffs for the use of Wilson and others, appellants. After the suit was begun Dykes and others assigned the asserted cause of action to Wilson and others. The railroad company, appellant, was defendant.

From a judgment in plaintiff's favor the defendant appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Mayes & Longstreet* and *J. M. Dickinson,* for appellant.

The court will observe that the single question here is, whether or not under the facts of this case, parol evidence was admissible to vary the terms of the bill of lading or written contract for the shipment of the cotton, and to impose on the railroad company a new and additional liability arising out of an alleged oral agreement made prior to the issuance of the bill of lading, between the shipper of the cotton and the agent of the carrier.

It is true that in certain cases the terms of a bill of lading may be explained or qualified by parol. But this is only in cases where fraud or mistake is alleged, or where the railroad company is shown to have received and shipped away goods from the possession and control of the shipper, and then attempted to force on him a written bill of lading different in its term from an oral agreement shown to have been made between the parties prior to the delivery of the goods to the carrier. This last is but a modification of the rule obtaining in cases of fraud, for it is held in such case the railroad company has put the ship-

per at a disadvantage, and that the attempt to impose a different contract on him is fraudulent.

It will be observed by the court that Wilson & Company are claiming rights under a contract which, according to their allegation, lies partly in parol and partly in writing. They rely both upon the bill of lading and upon the alleged verbal agreement with the railroad agent which they claim was made by Holmes, with him prior to the issuance of the bill.

Under the alleged parol agreement much greater and very different responsibilities are put upon the railroad company and their obligation is increased.

It is true that, ordinarily, a bill of lading is the evidence of the contract between the parties, and there can be no question but that the acceptance of the bill of lading by the shipper, with knowledge of its contents, makes of that instrument a binding contract and defines the rights and liabilities of the parties to it.

The plaintiff in this case was fully advised of the terms and the provisions of the bill of lading issued in this case. Indeed, plaintiff himself prepared the bill of lading in his own cotton office, filled it out with his own hand and carried it, with the compress receipts or clearances for the cotton, to the railroad office, where it was signed by the agent of the carrier when the receipts and bill of lading were simultaneously presented to him.

"It has been held that if the bill of lading was made out by the shipper himself, or by his agent, he cannot be permitted to plead ignorance of its terms or deny that he assented to them." 4 Am. & Eng. Enc. Law (2d ed.), 520 and authorities cited in note 3.

The liability sought to be imposed on the railroad company here arises, according to plaintiff's contention, solely from the alleged breach of the parol contract charged to have been entered into by Hazlehurst, the local agent, that the cotton should be shipped to New Orleans and should be shipped from New Orleans to Liverpool by the steamer Cliff.

This is a new, independent and totally different obligation from that assumed by the railroad company in its bill of lading,

and from the written contract that S. C. Wilson & Company, with full knowledge, assented to and accepted from the carrier. It is inconsistent with and contradictory of the terms of the writings between the parties, and the proof of such an alleged parol agreement should have been excluded.    70 Miss., 260; 71 Miss., 944; 72 Miss., 932; 19 So. Rep. 675; 23 So. Rep. 139.

Our legislature has recognized the value and efficiency of contracts by bills of lading, and they have been made conclusive in one respect against railroad companies.    Is this not persuasive that they are intended to be conclusive in other respects for the railroad companies when they are lawful, reasonable, and free from fraud, mistake, or illegality or imposition?

*E. L. Brown* and *E. R. Holmes,* for appellees.

Wilson & Company, in delivering the cotton to the carrier, were acting in their own behalf only in so far as they thereby completed their sale; in making the parol contract, and in accepting the bill of lading, they were acting as the agents of Dyke & Company; that the appellants so understood, is evidenced by the fact that the telegraphic order, stipulating that shipment should be made in time for October delivery, was shown its agent when the parol contract was made; and the further fact that the bill of lading was, by its said agent afterwards executed in the name of the latter firm; appellees are asserting the rights of that firm under an assignment to them.    At the time the parol agreement was made Wilson & Company gave notice to appellant's agent of the limits of their authority as agent of Dyke & Company, by showing the telegram, and the appellant, knowing that appellees had no authority to make any other than the parol agreement, cannot be heard to say, that in accepting the bill of lading which was probably not received by Dyke & Company until several days later, Wilson & Co., waived the parol agreement on behalf of Dyke & Company, because the agent knew that Wilson & Co., had no authority to make such waiver.    A case very similar to this, and which upholds this view, is that of *Mobile, etc., R. R. Co.* v.

*Jurey,* 111 U. S., 574, to which the attention of the court is especially called.

But evidence of the parol agreement is admissible upon another view. A bill of lading serves the double purpose of a receipt and a contract. A shipper, therefore, may accept the same as a receipt, and, at the same time, reject it as a contract, or reject a receipt and accept as a contract. The appellee had a right to accept the bill of lading, therefore, whether they assented to its terms as a contract or not. For this reason, and for the further reason that a bill of lading is not signed by the shipper, the implication of assent to its terms as a contract with its many "conditions" arising from the mere acceptance of it, is not so strong as in the case of accepting and retaining an ordinary contract; and the rule is that, in such cases, evidence of the previous parol agreement is admissible and that the jury may determine whether assent to its terms must be implied from its mere acceptance. *Steffen* v. *Railroad Co.,* 58 S. W., 1125; *Express Co.* v. *Haynes,* 67 Ill., 137; *Bostwick* v. *Railroad Co.,* 45 N. Y., 712; *Hamilton* v. *Railroad Co.,* 96 S. C., 398.

The appellees, for this reason, in addition to the fact that they had parted with the control of their goods, upon the faith of the parol agreement, may be said, as in the Weiner case, to have accepted the bill under "stress of circumstances." *Davis* v. *Granthum,* 4 Ohio St., 362; *Railroad Co.* v. *Weiner,* 49 Miss., 725.

TRULY, J., delivered the opinion of the court.

In no view of the case, as made by this record, was the testimony as to the alleged verbal contract between Wilson & Co. and the appellant admissible. This suit was brought by John Dykes & Co. for the use of Wilson & Co., and was for an alleged breach of contract existing between said Dykes & Co. and appellant. After suit was filed the right of action involved therein was, in writing, assigned to appellees. The assignment transferred to appellees "the right of action against the Y. & M. V.

R. R. Co. for damages caused by delay in the delivery of a shipment of one hundred bales of cotton under and by virtue of its export bill of lading No. 10, issued Oct. 1st, 1901."

The right to recover in the original suit must be found in that assignment. Wilson & Co. acquired thereby only the rights of Dykes & Co., and the measure of their damages is the amount, if any, to which their assignors were entitled. The assignment and all the evidences in the case show that the only contract existing between Dykes & Co. and appellant was the bill of lading referred to and introduced, and there is an utter absence of testimony to prove a breach of any of its conditions. There was no proof of any unreasonable delay in the handling of the freight, and there is no provision in the contract guarantying delivery in Liverpool or any other port by any specified date.

The bill of lading, in express terms, provided that: "Clause 1, Sec. 2. No carrier is bound to carry said property by any particular train or vessel or in time for any particular market or otherwise than with as reasonable dispatch as its general business will permit." If there was no breach of the contract declared on, there could be no recovery.

Under this state of case, the testimony of Holmes as to the alleged antecedent verbal contract existing between Wilson & Co. and appellant was admissible under none of the established rules of evidence. It was not admissible under the rule permitting, in exceptional cases, parol testimony to vary the terms of a written contract, even if that rule be applicable to cases of this character, upon which point we intimate no opinion. It was, in truth, an effort to establish another and different contract, between other and different parties, made and entered into on a different date, and, as that contract was not involved in the suit then pending, any testimony in reference to its terms was clearly incompetent. It was made prior to the purchase of the cotton by Dykes & Co. prior to the delivery of the cotton to the railroad company, and before the issuance of the bill of lading on which the suit was based. Dykes & Co. were not parties to that alleged verbal

contract, had no interest in, knowledge of, or connection with it, and, so far as this record shows, were never advised of it. This seems to have been recognized in the court below, and an effort was made to avoid the difficulty by having Wilson & Co. substituted as plaintiffs under § 660, Code 1892, and by filing the amended bill of particulars herein. But this cannot avail the appellees. No recovery could be had by Dykes & Co., or their assignees, under the written contract, because it had not been breached. No recovery could be had by Wilson & Co. under the verbal contract, because no cotton was delivered the carrier under its terms. As neither contract gave a good cause of action, the joining of the two could not advance the interest of appellees, because, having no right of action under either, their suit cannot be maintained by the attempt to use the terms of one contract to strengthen the claim under another. It was not permissible to resort to the terms of one contract, in an effort to show a violation of the conditions of another, under the circumstances in evidence here.

It might be remarked, in passing, that the proof as to any loss by either Wilson & Co. or Dykes & Co. is very vague and uncertain—not sufficient, in our judgment, to sustain a verdict for any amount, even if the proof had justified the submission of the case to the jury upon the question of the liability of the appellant.

*Reversed and remanded.*